WHITE (THORNE v.). See Case No. 13,989.

WHITE (TOLER v.). See Case No. 14,079.

WHITE (TRYON v.). See Case No. 14,208.

WHITE (TURNER v.). See Case No. 14,264.

WHITE (UNION PAPER COLLAR CO. v.). See Case No. 14,396.

## Case No. 17,558.

### WHITE v. UNITED STATES.

[1 Hayw. & H. 127.] [2]

Circuit Court, District of Columbia. Jan. 7, 1843.

#### CRIMINAL LAW—EVIDENCE—MANNER OF OBTAINING CONFESSION.

It is not proper to ask a witness on cross-examination to explain by what process of examination or what influence he expected to use to bring the prisoner to confess the offence with which he was charged, when asked permission to take the prisoner to a private room. But he may be asked what influences he had used to obtain a confession from the prisoner

The traverser, Samuel White, was indicted for the larceny of one bank check of the value of thirty dollars; two cloth coats of the value of forty dollars; two pairs of pantaloons of the value of twenty dollars; one linen shirt of the value of three dollars; and two pocket handkerchiefs of the value of two dollars, of the moneys, goods and chattels of one John White. The said Samuel White was found guilty and sentenced to suffer imprisonment and labor in the penitentiary of the District of Columbia for the period of eighteen months, to take effect one day from and after the rising of the next term of the circuit court.

James M. Carlisle and James Hoban, for the traverser.

P. R. Fendall, for the United States.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton. Esq.]

The following bill of exceptions was signed by DUNLOP, Circuit Judge:

Upon the trial of this cause, the United States proved by Dr. Mayo, a competent witness, that he was present at the magistrate's office in Alexandria where the prisoner was then in custody upon a warrant issued upon the charge of stealing the goods named in the indictment; that the prisoner there constantly denied having any knowledge of the offence charged, and upon being applied to, directed the officer where his lodgings were, and that the officer and the witness went thither and searched, but found nothing. That they returned to the office aforesaid, and asked the prisoner for the key of his trunk; that he told them the trunk was not locked, and thereupon they returned and found that the trunk was not locked; and upon searching it, found a shirt and a pocket handkerchief which, by the same witness, the United States gave evidence tending to identify as one of the shirts and one of the handkerchiefs mentioned in the indictment; and that the shirt so found was worth three or four dollars; and that the handkerchief so found was worth two dollars; and that they were the property of Speaker White. That the prisoner said the shirt had been given to him by a woman whom he named, and that the pocket handkerchief was purchased by him at a certain store in Baltimore, at a corner which he named. That the prisoner was committed for further examination, and was again examined in Washington county, before Justice Morsell. That the same evidence was there given, and that the prisoner positively denied and persevered in denying that he had any knowledge of the offence. That Lambert S. Beck, a constable of the county, was there present, and had the prisoner in his custody; that the said Beck said to the witness Mayo that he, Beck, had a particular talent at getting confessions out of prisoners; and that the said Beck, upon permission being granted by the magistrate, took the prisoner into another room, and in a few minutes returned and said that the prisoner had made a full confession of being guilty of stealing all the articles named in the indictment. And further, the United States proved by said Lambert S. Beck, that witness was at Justice Morsell's office when the prisoner was brought thither by constables Statford and Hancock. Speaker White made his complaint then of having been robbed. The shirt and handkerchief before spoken of were produced; the prisoner claimed them as his own; said shirt was given to him by a woman, whose name he gave, but said he could not tell where she lived. When he took the prisoner into the room as aforesaid, he proceded to ask the prisoner where the rest of the goods were, and said there is no doubt the person who stole some of them stole all. The witness told the prisoner not to say anything unless he, the prisoner, took them. The witness then proceeded to tell the prisoner that the shirt and handkerchief before mentioned were fully identified and proven to have been stolen from Speaker White, and that it was also proven that all the articles which are now named in the indictment were stolen from the said Speaker White at the same time; and that he, the witness, was familiar with law and the decisions of the circuit court of this District in such cases; and that they had expressly decided that the identification of any one article found in the prisoner's possession, as one of several articles stolen at the same time, was proof enough to convict him of stealing the whole; and that he, the prisoner, would certainly be convicted of stealing all the articles which are now named in the indictment; that the witness was anxious to recover the rest of the clothes and articles for Mr. White, and he, the prisoner, might as well tell all about it; that he, the witness, then asked the prisoner what he had done with the other articles which he was charged in the indictment with having stolen or which he had stolen (the witness was not certain which form of expression he used, but was certain that he used one or the other), from Speaker White. Whereupon the prisoner told him where some of them were, and the witness repeated the same question in the same form as to the other articles except the check. And further, that at the magistrate's office Speaker White charged the prisoner with stealing the check. The United States further proved by Hugh B. Sweeny, a competent witness, that the prisoner presented at the Bank of Washington, where the witness is teller, for payment, a check, and that the witness asked the prisoner where he got it, and the prisoner replied, "Oh! Mr. White has got his pantaloons, sir;" that the payment was refused and the check returned to the prisoner. That said check was drawn by one J. T. Moorehead; that said drawer had no funds in the bank at the time of drawing or of presentation as aforesaid, but that the bank had sometimes paid his checks when they only held his orders upon the sergeant-at-arms of the house; but that at the period referred to they had no such orders. That the said check was to the order of John White, and that there was endorsed the name of the said John White in his own handwriting, with which the witness was acquainted. And the signature of the said Moorehead as drawer of the check was genuine, and that the witness was acquainted with the said Moorehead's handwriting; that the witness never saw the check again after so seeing it as aforesaid in the possession of the prisoner; that at the magistrate's office, where Speaker White made his complaint, he stated that the check and the other things named in the indictment were stolen at the same time; that the prisoner was present on that occasion and denied that he had been at the bank; that the witness understood Speaker White when so speaking of the check to speak as prosecutor. And thereupon the prisoner, by his counsel, objected, that the confession of the prisoner

made to the said Beck, under the circumstances set forth in the evidence aforesaid, is not admissible and competent evidence against him upon this indictment to go to the jury; but the court overruled the objection and allowed the said confession to go to the jury. And the prisoner by his counsel proceeding in the cross-examination of the said Lambert S. Beck, put to him the following question: "Explain to the jury by what process of examination, or by what influences you expected to use to bring the prisoner to confess the offence with which he was charged, when you asked permission to take him to a private room for that purpose, as stated in your answer to a preceding question." To which question the United States, by their attorney objected as not competent to be put to and answered by said Beck. And thereupon the court refused to allow the said question to be put and would not allow the same to be put or answered, but allowed the counsel to ask Beck, what influences, if any, he had used to obtain a confession from the prisoner.

The prisoner by his counsel excepted to the decision of the court, overruling his objection to the admissibility of the confessions given in evidence by Beck, and also excepted to the refusal of the court to allow the question on cross-examination as aforesaid to be put and answered, and prayed the court to sign and seal this, his bill of exceptions, which was accordingly done.

On the case being argued by the counsel for the plaintiff in error and by the attorney for the United States, it was decided that there was no error in the judgment of the criminal court. The judgment was thereupon affirmed.